A11A0398. SMITH v. THE STATE.
A11A0476. JACKSON v. THE STATE.
(714 SE2d 593)

MIKELL, Judge.
   Jerry Michael Smith, convicted by a jury of possession of cocaine with the intent to distribute and possession of marijuana with intent to distribute, appeals from the trial court's denial of his motion for new trial in Case No. A11A0398, challenging the sufficiency of the evidence against him.[1] Gloria Jean Jackson, convicted of the same offenses, appeals from the trial court's denial of her motion for new trial in Case No. A11A0476, contending that her trial counsel rendered ineffective assistance by not objecting to the motion of the state to join the two cases for trial. The two appeals have been consolidated for our review.

*Case No. A11A0398*

1. We first consider Smith's challenge to the legal sufficiency of the evidence.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

---

[1] Following the trial, Smith pled guilty to possession of a firearm by a convicted felon, which had been bifurcated for trial. This plea is not at issue in this appeal.

[2] (Citations and footnotes omitted.) *Sexton v. State*, 268 Ga. App. 736 (1) (603 SE2d 66) (2004).

This test applies "when the sufficiency of the evidence is challenged, whether the challenge arises from the [denial] of a motion for directed verdict or the [denial] of a motion for new trial."[3]

Viewed in this light, the evidence was that, on October 18, 2007, a team of ten officers from the Newton County Sheriff's Department Special Investigations Unit executed a search warrant at the residence located at 110 Valley Street in Newborn, which is in Newton County. Officer Shane Brown found Smith in the yard with three other men and secured them. According to Officer Brown, both Smith and Jackson lived at the house. Officer Brown searched Smith and found $356 in cash, a cell phone, a billfold, a key ring, and two boxes of cigars.

Special Agent Charles Cook entered the house and found a Tupperware container in a cabinet in the kitchen. The container contained a plastic bag which held a substantial amount of crack cocaine,[4] a pill bottle with the label removed which contained residue consistent with crack cocaine, a digital scale, a razor blade, and a couple of bags of marijuana. The digital scale had residue consistent with crack cocaine on it and some score marks indicative of cutting cocaine.

As Special Agent Tony Howard entered the house and headed toward the master bedroom, he saw Jackson coming from that bedroom. When Jackson saw him, she turned around and went back into the bedroom. After securing Jackson, Special Agent Howard searched the bedroom, finding another digital scale, a shoe box containing a black plastic grocery bag, a brown paper sack containing Tupperware dishes, and a third digital scale. The paper sack and some of the Tupperware dishes contained over 1,500 small baggies, which, in Special Agent Howard's experience, were used to package narcotics. One of the scales also had white residue on top of it. Special Agent Howard also found a marijuana leaf inside a man's Nike shoe in the bedroom. The bedroom contained both men's and women's shoes and clothing. Special Agent Howard also found a pocketbook by the bed which contained a change purse in which two baggies of marijuana were found. Deputy James Fountain assisted in searching the master bedroom and found a .32 caliber handgun in the chest of drawers.

Police Officer Chris Smith searched the washroom located adjacent to an open carport attached to the house. There, he found a cooler containing a plastic bag with a large amount of suspected

---

[3] (Citation omitted.) *Millirons v. State*, 268 Ga. App. 644, 645 (1) (602 SE2d 346) (2004).

[4] The white material in the plastic bag in the Tupperware bowl tested positive for cocaine and weighed 10.25 grams.

marijuana in it. Officer Smith also found a police scanner on the sofa in the den of the house. According to Officer Smith, in his experience, police scanners are used by those distributing narcotics to monitor police activity. The material in the cooler tested positive for marijuana and weighed 109.7 grams.

Lieutenant Phillip Bradford, the commander of the Special Investigations Unit, interviewed both Smith and Jackson after advising them of their *Miranda* rights. Jackson said that the house was hers and that Smith was her boyfriend who lived with her, although she later said he stayed there from time to time. Jackson denied knowledge of any of the marijuana and cocaine, including the baggies of marijuana found in her pocketbook. Smith told Lieutenant Bradford that all of the narcotics found in the house belonged to him. Smith did not, however, provide details of what type of narcotics might be present. He also said the gun belonged to Jackson, but he did not believe it was working.

Lieutenant Bradford was accepted by the trial court as an expert in the field of street level narcotics. He opined, based on the large number of packaging supplies found, the large amounts of marijuana and crack cocaine found, as well as the handgun and police scanner found, that Smith and Jackson possessed the crack cocaine and marijuana for the purpose of distributing them.

Evidence of Smith's 1993 arrest and conviction for possession of cocaine with intent to distribute was introduced as a similar transaction. Smith was observed from a distance by law enforcement officers as he dropped an object on the ground.

Officers returned to the area and found a baggie containing a significant amount of suspected crack cocaine. A certified copy of this conviction was admitted into evidence.

Smith's challenge to the sufficiency of the evidence consists of a re-argument of what the evidence below proved. "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[5] As long as there is some evidence, even though contradicted, to support each essential element of the state's case, this Court will uphold the jury's verdict.[6] The evidence was sufficient for a rational trier of fact to find Smith guilty beyond a reasonable doubt of possession with intent to distribute cocaine and marijuana.[7]

---

[5] (Citation omitted.) *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).

[6] *Parnell v. State*, 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

[7] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

## Case No. A11A0476

2. Jackson's sole enumeration of error is that the trial court erred in denying her motion for new trial based on ineffective assistance of counsel even though trial counsel failed to object to the joining of the defendants for trial.

> In order to establish ineffectiveness of trial counsel, appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo.[8]

Jackson's trial attorney had 11 years of criminal law experience. He was appointed prior to the motion/status hearing and represented Jackson through two criminal trials, the first of which ended in a hung jury. The attorney spoke with Jackson at length at least three or four times prior to the first jury trial. Following the declaration of a mistrial in the first trial, trial counsel spoke with many of the jurors who served during that trial and determined that the vote was eleven to one to convict Jackson. Trial counsel consulted with Jackson again in preparation for the second trial and advised her to accept the state's plea offer, which she refused.

Trial counsel testified that he had found no legal basis upon which to object to the joinder of Jackson's case with that of Smith. Smith's statements to officers during the search did not inculpate Jackson and, therefore, provided no basis for objection under *Bruton v. United States*.[9]

Further, trial counsel testified that he did not object to the joinder or move later for severance as a matter of trial strategy. Trial counsel believed that having Jackson tried with Smith would enhance his strategy of placing the blame on Smith. Smith had made a statement to police that all of the narcotics found in the house

---

[8] (Citations and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

[9] 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). Compare *Cabrera v. State*, 303 Ga. App. 646, 652 (2) (694 SE2d 720) (2010).

belonged to him; he had previously been convicted of possession of cocaine with intent to distribute; and he had several other drug convictions.

"As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."[10] We agree with the trial court that trial counsel's strategies and tactics do not constitute deficient performance. The denial of Jackson's motion for new trial on this ground was not error.

*Judgments affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED JUNE 14, 2011.

*Teresa L. Smith*, for appellant (case no. A11A0398).
*Steven B. Mizerak*, for appellant (case no. A11A0476).
*W. Kendall Wynne, Jr., District Attorney, Layla H. Zon, Clint C. Malcolm, Assistant District Attorneys*, for appellee.

---

[10] (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). Accord *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Wright v. State*, 274 Ga. 730, 732 (2) (b) (559 SE2d 437) (2002) (matters of trial tactics and strategy do not amount to ineffective assistance).